## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ~~ALABAMA~~
## ~~NORTHERN~~ DIVISION
### Eastern

RECEIVED
2019 SEP 27  A 11: 33

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| **OLIVIA KIONI-HENDRIETH,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO.: 3:19-cv-719** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUBURN UNIVERSITY,** | ) | **JURY DEMAND** |
| | ) | |
| **DEFENDANT.** | ) | |

---

## COMPLAINT

---

## I. JURISDICTION

1.     This is a suit authorized and instituted pursuant to Title VII of the "Civil Rights Act of 1964", as amended, 42 U.S.C. §1981, as amended, and 42 U.S.C.§1983. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by Title VII, 42 U.S.C. § 1981, and 42 U.S.C.§1983, providing injunctive and other relief against racial discrimination and retaliation in employment.

## II. PARTIES

2.     Plaintiff, Olivia Kioni-Hendrieth, is an African American female

citizen of the United States and is a resident of Deatsville, Alabama.

3.     Defendant, Auburn University, is an employer doing business in the state of Alabama. At all times relevant to this action, Defendant has maintained and operated a business in Alabama. Defendant is engaged in an industry affecting commerce and has fifteen (15) or more employees and employers within the meaning of 42 U.S.C. § 2000e (b), (g) and (h).

## III. ADMINISTRATIVE PROCEDURES

4.     Plaintiff hereby adopts and realleges paragraphs one (1) through three (3) herein above as if fully set forth herein.

5.     Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation that occurred while Plaintiff was an employee of Auburn University.

6.     This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment.

7.     On July 30, 2018, within 180 days of the last discriminatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").  (Exhibit 1).

8.     Plaintiff's corrected and revised Dismissal and Notice of Rights was

2

mailed by the EEOC to the Plaintiff on June 28, 2019[1], and Plaintiff has filed suit within ninety (90) days of receipt of her Dismissal and Notice of Rights. (Exhibit 2).

9.     All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## IV.  STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

### COUNT ONE

### STATEMENT OF PLAINTIFF'S TITLE VII, 42 U.S.C. § 1981, AND 42 U.S.C. § 1983 RACIAL DISCRIMINATION CLAIMS

10.     Plaintiff hereby adopts and realleges paragraphs one (1) through nine (9) above as if fully set forth herein.

11.     Plaintiff, Olivia Kioni-Hendrieth, is an African American female.

12.     Plaintiff began working for the Defendant on or about July 2010, as a Mental Health Specialist I, with a starting salary around $36,000.00 per year.

13.     Plaintiff was employed to work on the ABSOP program for the Psychology Department.

14.     The focus of the ABSOP program included the assessment and treatment of juveniles that have been adjudicated for illegal sexual behavior.

15.     Plaintiff was qualified for the position at the time of her hire.

16.     It took Plaintiff approximately four years to get promoted to Mental

---

[1]     The EEOC erroneously issued a Dismissal and Notice of Rights to Plaintiff with an incorrect year for the date of mailing, June 6, 2018, instead of June 6, 2019, and the EEOC issued a revised Dismissal and Notice of Rights on June 28, 2019. (Exhibit 2).

Health Specialist II, and another two years to get promoted to Mental Health Specialist III.

17.   Since 2014, Plaintiff has been a team lead and assigned additional team lead duties and has also been assigned managerial duties without any additional compensation.

18.   Plaintiff noticed that less qualified Caucasian employees were paid more when they were hired than Plaintiff and other African American employees, including, but not limited to Rhonda Peterson.

19.   Also, these new Caucasian employees were placed in higher level and higher paying positions than Plaintiff and other African American employees.

20.   In addition, Plaintiff noticed that she and other African American employees were not promoted as quickly or as often as less qualified Caucasian employees.

21.   Jan Newman, JR PhD, Assistant Clinical Professor, stated she heard Barry Burkhart, PhD, Professor and Director of ABSOP Program, make negative comments about African Americans that made her feel uncomfortable.

22.   At the time Dr. Newman witnessed Dr. Burkhart make racially offensive comments she was a member of the Executive group and made hiring and salary decisions.

23.   In or around April 2016, Plaintiff requested to be promoted to the position of Manager of Clinical Services.

24.   Plaintiff qualified for the position of Manager of Clinical Services and

has performed many of the duties and responsibilities of this position since 2014.

25.    Plaintiff was denied the Manager of Clinical Services position.

26.    In late 2017, Plaintiff again applied for the open Manager of Clinical Services position. Plaintiff was interviewed and was informed that she did well in her interview.

27.    Dr. Burkhart was a decision maker with hiring decisions for both Manager of Clinical Services positions for which Plaintiff applied.

28.    In February 2018, Dr. Burkhart informed Plaintiff that she was not selected for the Manager of Clinical Services position.

29.    In or around February 2018, Defendant placed a Caucasian male in the Clinical Services Manager position Plaintiff applied for and Plaintiff's race and gender were motivating factors in Defendant's decision to deny her the Clinical Services Manager position.

30.    Plaintiff and other African American employees are assigned a higher caseload than Caucasian employees in the same or similar positions.

31.    Caucasian employees in the same of similar positions have not been required to perform the same amount of work and are not held to the same work standards as Plaintiff and other African American employees.

32.    In 2017, Plaintiff was assigned on call duties that were the duties of a clinical manager. Plaintiff was not given any additional pay for these additional managerial duties.

33.     In addition, Plaintiff has not been paid for her assigned on call duties.

34.     Plaintiff has continually been paid less than Caucasian employees in the same or similar positions.

35.     Plaintiff is paid an annual salary and is also eligible for bonuses. Plaintiff has been denied bonuses and/or paid a lower bonus than Caucasian employees.

36.      In late 2017, Plaintiff complained to Defendant about discrimination she was experiencing as well as discrimination she witnessed toward other African American employees.

37.     In late 2017, Plaintiff's complaints included, but are not limited to, complaints that jobs were created for Caucasian employees and that Caucasian employees have been paid more than Plaintiff and other African American employees.

38.     After complaining to Defendant about discrimination and engaging in protected activity Plaintiff has been retaliated and harassed.

39.     After Plaintiff complained and engaged in protected activity, she has been unjustly disciplined and Plaintiff has been informed that Dr. Burkhart directed that Plaintiff be disciplined.

40.     After Plaintiff complained she has also been informed that Dr. Burkhart instructed employees to alter or change Plaintiff's job duties.

41.     After Plaintiff complained she has been informed that Dr. Burkhart has asked employees to "watch out" for Plaintiff.

42.     After Plaintiff made discrimination complaints Dr. Burkhart began to

ignore her and would not have anything to do with Plaintiff.

43.     Because Defendant failed to stop the discrimination and Plaintiff was being harassed and retaliated for her complaints, Plaintiff filed a charge of discrimination with the EEOC in July 2018.

44.     In or around September 2018, Dr. Burkhart questioned Plaintiff's supervisors and other employees about Plaintiff's EEOC change and informed employees that "there was nothing to it [the EEOC charge]" and that "Auburn threw it out."

45.     After Plaintiff filed her EEOC charge Dr. Burkhart has stated, "I want her gone" referring to Plaintiff.

46.      After Plaintiff filed her EEOC charge and engaged in protected activity she has continued to be retaliated against and unjustly disciplined.

47.     After filing her EEOC charge Plaintiff has also been retaliated against and harassed for taking notes in meetings, a routine practice for Plaintiff and other employees.

48.     In or around October 2018, a co-worker unexpectedly passed away and Plaintiff requested leave and her request was approved. Even though Plaintiff requested and was granted leave, she was still unjustly disciplined.

49.     In or around November 2018, Plaintiff was falsely accused of leaving without permission, but Plaintiff had proof that she emailed her supervisor and that she did not leave work without permission.

50.     After Plaintiff complained and filed her EEOC charge, her immediate

supervisor was instructed by Dr. Burkhart to track Plaintiff's time and attendance. This request was not made for other employees.

51.     After Plaintiff complained and filed her EEOC charge, Dr. Burkhart made false complaints that have been unfounded that Plaintiff created a hostile environment.

52.     Plaintiff filed an internal complaint/grievance regarding the retaliation, harassment and unjust discipline and refuted all the false grounds for discipline.

53.     Prior to her complaints and EEOC charge Plaintiff had not been disciplined by Defendant.

54.     Prior to filing her EEOC Charge, Plaintiff received favorable performance evaluations by Dr. Burkhart; however, after Plaintiff filed her EEOC Charge, Dr. Burkhart provided unfavorable evaluations.

55.     Plaintiff has been discriminated against because of her race, African American.

56.     Plaintiff was a good employee and qualified to hold her position with Defendant.

57.     Other African American employees working for Defendant have been discriminated against because of their race.

58.     Defendant has a habit and/or practice of allowing and condoning racial discrimination against its employees and on its campus.

59.     Plaintiff has been denied pay because of her race, paid less than Caucasian employees performing the same or similar duties, denied pay raises

because of her race, discriminated against because of her race, treated differently because of her race, denied positions because of her race, received a poor performance evaluation because of her race, denied bonuses because of her race, provided less bonus because of her race, unjustly disciplined, and subjected to additional adverse acts by Defendant because of her race, African American.

60.     Defendant has condoned and tolerated the racial discrimination.

61.     Defendant's actions were in violation of Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, 42 U.S.C. § 1981, AND 42 U.S.C. § 1983.

62.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay, front pay, compensatory damages, attorney's fees, expenses, and costs is her only means of securing adequate relief.

63.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless given appropriate damages by this Court.

64.     Plaintiff's race was a motivating factor in Defendant's unlawful and adverse treatment of Plaintiff.

65.     The Plaintiff has satisfied all administrative prerequisites to bring this claim.

## COUNT TWO

### STATEMENT OF PLAINTIFF'S TITLE VII, 42 U.S.C. § 1981, AND 42 U.S.C. § 1983 RETALIATION CLAIMS

66.    Plaintiff adopts and realleges paragraphs one (1) through nine (9) as if fully set forth herein.

67.    Plaintiff, Olivia Kioni-Hendrieth, is an African American female.

68.    Plaintiff began working for the Defendant on or about July 2010, as a Mental Health Specialist I, with a starting salary around $36,000.00 per year.

69.    Plaintiff was employed to work on the ABSOP program for the Psychology Department.

70.    The focus of the ABSOP program included the assessment and treatment of juveniles that have been adjudicated for illegal sexual behavior.

71.    Plaintiff was qualified for the position at the time of her hire.

72.    It took Plaintiff approximately four years to get promoted to Mental Health Specialist II, and another two years to get promoted to Mental Health Specialist III.

73.    Since 2014, Plaintiff has been a team lead and assigned additional team lead duties and has also been assigned managerial duties without any additional compensation.

74.    Plaintiff noticed that less qualified Caucasian employees were paid more when they were hired than Plaintiff and other African American employees, including, but not limited to Rhonda Peterson.

75.    Also, these new Caucasian employees were placed in higher level and higher paying positions than Plaintiff and other African American employees.

76.    In addition, Plaintiff noticed that she and other African American employees were not promoted as quickly or as often as less qualified Caucasian employees.

77.    Jan Newman, JR PhD, Assistant Clinical Professor, stated she heard Barry Burkhart, PhD, Professor and Director of ABSOP Program, make negative comments about African Americans that made her feel uncomfortable.

78.    At the time Dr. Newman witnessed Dr. Burkhart make racially offensive comments she was a member of the Executive group and made hiring and salary decisions.

79.    In or around April 2016, Plaintiff requested to be promoted to the position of Manager of Clinical Services.

80.    Plaintiff qualified for the position of Manager of Clinical Services and has performed many of the duties and responsibilities of this position since 2014.

81.    Plaintiff was denied the Manager of Clinical Services position.

82.    In late 2017, Plaintiff again applied for the open Manager of Clinical Services position. Plaintiff was interviewed and was informed that she did well in her interview.

83.    Dr. Burkhart was a decision maker with hiring decisions for both Manager of Clinical Services positions for which Plaintiff applied.

84.    In February 2018, Dr. Burkhart informed Plaintiff that she was not selected for the Manager of Clinical Services position.

85.    In or around February 2018, Defendant placed a Caucasian male in

the Clinical Services Manager position Plaintiff applied for and Plaintiff's race and

gender were motivating factors in Defendant's decision to deny her the Clinical

Services Manager position.

86.    Plaintiff and other African American employees are assigned a higher

caseload than Caucasian employees in the same or similar positions.

87.    Caucasian employees in the same of similar positions have not been

required to perform the same amount of work and are not held to the same work

standards as Plaintiff and other African American employees.

88.    In 2017, Plaintiff was assigned on call duties that were the duties of a

clinical manager. Plaintiff was not given any additional pay for these additional

managerial duties.

89.    In addition, Plaintiff has not been paid for her assigned on call duties.

90.    Plaintiff has continually been paid less than Caucasian employees in

the same or similar positions.

91.    Plaintiff is paid an annual salary and is also eligible for bonuses. Plaintiff

has been denied bonuses and/or paid a lower bonus than Caucasian employees.

92.    In late 2017, Plaintiff complained to Defendant about discrimination

she was experiencing as well as discrimination she witnessed toward other African

American employees.

93.    In late 2017, Plaintiff's complaints included, but are not limited to,

complaints that jobs were created for Caucasian employees and that Caucasian

employees have been paid more than Plaintiff and other African American employees.

94.     After complaining to Defendant about discrimination and engaging in protected activity Plaintiff has been retaliated and harassed.

95.     After Plaintiff complained and engaged in protected activity, she has been unjustly disciplined and Plaintiff has been informed that Dr. Burkhart directed that Plaintiff be disciplined.

96.     After Plaintiff complained she has also been informed that Dr. Burkhart instructed employees to alter or change Plaintiff's job duties.

97.     After Plaintiff complained she has been informed that Dr. Burkhart has asked employees to "watch out" for Plaintiff.

98.     After Plaintiff made discrimination complaints Dr. Burkhart began to ignore her and would not have anything to do with Plaintiff.

99.     Because Defendant failed to stop the discrimination and Plaintiff was being harassed and retaliated for her complaints, Plaintiff filed a charge of discrimination with the EEOC in July 2018.

100.    In or around September 2018, Dr. Burkhart questioned Plaintiff's supervisors and other employees about Plaintiff's EEOC change and informed employees that "there was nothing to it [the EEOC charge]" and that "Auburn threw it out."

101.    After Plaintiff filed her EEOC charge Dr. Burkhart has stated, "I want her gone" referring to Plaintiff.

102.   After Plaintiff filed her EEOC charge and engaged in protected activity she has continued to be retaliated against and unjustly disciplined.

103.   After filing her EEOC charge Plaintiff has also been retaliated against and harassed for taking notes in meetings, a routine practice for Plaintiff and other employees.

104.   In or around October 2018, a co-worker unexpectedly passed away and Plaintiff requested leave and her request was approved. Even though Plaintiff requested and was granted leave she was still unjustly disciplined.

105.   In or around November 2018, Plaintiff was falsely accused of leaving without permission, but Plaintiff had proof that she emailed her supervisor and that she did not leave work without permission.

106.   After Plaintiff complained and filed her EEOC charge her immediate supervisor was instructed by Dr. Burkhart to track Plaintiff's time and attendance. This request was not made for other employees.

107.   After Plaintiff complained and filed her EEOC charge, Dr. Burkhart made false complaints that have been unfounded that Plaintiff created a hostile environment.

108.   Plaintiff filed an internal complaint/grievance regarding the retaliation, harassment and unjust discipline and refuted all the false grounds for discipline.

109.   Prior to her complaints and EEOC charge Plaintiff had not been disciplined by Defendant.

110.   Prior to filing her EEOC Charge, Plaintiff received favorable performance evaluations by Dr. Burkhart; however, after Plaintiff filed her EEOC

Charge, Dr. Burkhart provided unfavorable evaluations.

111.   Plaintiff was a good employee and qualified to hold her position with Defendant.

112.   Other African American employees working for Defendant have been discriminated against because of their race and retaliated against for engaging in protected activity.

113.   Defendant has a habit and/or practice of allowing and condoning retaliation against its employees and on its campus.

114.   Plaintiff has been retaliated against and denied pay, denied pay raises, harassed, denied positions, received poor performance evaluation, denied bonuses and given lesser bonus amounts, unjustly disciplined, and subjected to additional adverse acts by Defendant because of her complaints and protected activity.

115.   Defendant has condoned and tolerated retaliation.

116.   The retaliation Plaintiff was forced to endure prevented other employees from complaining and engaging in protected activity.

117.   Plaintiff avers that she has been unjustly harassed, denied pay, denied pay raises, treated differently, denied bonuses, received less bonuses, and subjected to additional adverse actions for engaging in a protected activity by complaining of race discrimination to her superiors.

118.   Plaintiff's engaging in protected activity was the cause of the adverse actions she suffered.

119. There is a causal connection between Plaintiff's protected activity and the retaliation she suffered.

120. Plaintiff has been retaliated against in violation of Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

121. Defendant has a habit and/or practice of retaliating against employees that engage in protected activity.

122. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for back pay, front pay, compensatory damages, attorney's fees is her only means of securing adequate relief.

## V.   PLAINTIFF'S PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, the Plaintiff requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a. Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the Civil Rights Act of 1964, as amended, the "Civil Rights Act of 1866," as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1983;

b. Grant Plaintiff a permanent injunction enjoining Defendant, its Agent, Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the Civil

Rights Act of 1964, as amended, the "Civil Rights Act of 1866," as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1983;

c. Grant Plaintiff an Order requiring the Defendant to make her whole by granting appropriate compensatory damages (including damages for mental anguish), interest, attorney's fees, expenses, costs; and,

d. Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

CYNTHIA FORMAN WILKINSON
State Bar ID No: ASB-9950-L68C
Attorney for Plaintiff

**OF COUNSEL:**

**WILKINSON LAW FIRM, PC**
215 North Richard Arrington, Jr. Blvd., Suite 301
Birmingham, Alabama 35203
Tel:   (205) 250-7866
Fax:   (205) 250-7869
E-mail: wilkinsonefile@wilkinsonfirm.net

HEATHER NEWSOM LEONARD
State Bar ID No.: ASB-1152-O61H
Attorney for Plaintiff

**OF COUNSEL:**

**HEATHER LEONARD, PC**
2105 Devereux Circle, Suite 111
Birmingham, Alabama 35243

Tel:    (205) 977-5421
Fax:   (205) 278-1400
E-mail: Heather@HeatherLeonardPC.com

**PLAINTIFF'S ADDRESS**:

Ms. Olivia Kioni-Hendrieth
c/o WILKINSON LAW FIRM, PC
215 North Richard Arrington, Jr. Blvd., Suite 301
Birmingham, Alabama 35203

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**

Auburn University
1000 Industrial School Road
Mt. Meigs, Alabama 36057